**EXHIBIT B**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282   Fax (818) 662-4141

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

NY, Secretary of State

FILING NUMBER: 200407025551478
FILING DATE: 02-JUL-2004
IMAGE REFLECTS DATA FROM AN ELECTRONIC FILING

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | J.S. SUAREZ, INC. | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 1c. MAILING ADDRESS 450 Park Avenue | CITY New York | STATE NY | POSTAL CODE 10022 | COUNTRY US |
| 1d. TAX ID #: SSN OR EIN 131842534 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any [X] NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any [ ] NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - Insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | Merrill Lynch Business Financial Services Inc. | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
| 3c. MAILING ADDRESS 222 North LaSalle Street | CITY Chicago | STATE IL | POSTAL CODE 60601 | COUNTRY US |

4. This FINANCING STATEMENT covers the following collateral:
All Accounts, Chattel Paper, Contract Rights, Inventory, Equipment, Fixtures, General Intangibles, Deposit Accounts, Documents, Instruments, Investment Property and Financial Assets of Debtor, howsoever arising, whether now owned or existing or hereafter acquired or arising, and wherever located; together with all parts thereof (including spare parts), all accessories and accessions thereto, all books and records (including computer records) directly related thereto, all proceeds thereof (including, without limitation, proceeds in the form of Accounts and insurance proceeds).

In accordance with the terms of a certain Loan Agreement between Debtor and Secured Party, Debtor has agreed that except for certain "Permitted Liens" (as defined in said Loan Agreement), Debtor will not further encumber any of the above property without the prior written consent of Secured Party.

5. ALTERNATIVE DESIGNATION [if applicable]: [ ] LESSEE/LESSOR  [ ] CONSIGNEE/CONSIGNOR  [ ] BAILEE/BAILOR  [ ] SELLER/BUYER  [ ] AG. LIEN  [ ] NON-UCC FILING
6. [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2
8. OPTIONAL FILER REFERENCE DATA 014122pdt   J.S. SUAREZ, INC.

10736552

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# EXHIBIT C



**UNCONDITIONAL GUARANTY**

FOR VALUE RECEIVED, and in order to induce **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.** ("MLBFS") to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with **J.S. SUAREZ, INC.**, a corporation organized and existing under the laws of the State of New York (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as "Customer") under: (a) that certain **WCMA LOAN AND SECURITY AGREEMENT NO. 850-07A36** between MLBFS and Customer (the "Loan Agreement"), (b) any "Loan Documents", as that term is defined in the Loan Agreement including, without limitation, the **NOTE(S)** incorporated by reference in the Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Loan Documents (collectively, the "Guaranteed Documents"), **the undersigned ("Guarantor") hereby unconditionally guarantees to MLBFS:** (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customer to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by Customer of each and every other covenant and warranty of Customer set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customer to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the "Obligations"). Guarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution and delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customer.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged. Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any "Bankruptcy Event", as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "Returned Payment"), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customer or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS; (f) the granting of credit from time to time by MLBFS to Customer in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customer or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customer or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customer, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customer or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under the Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including

without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor; and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

This Guaranty shall be governed by the laws of the State of Illinois. **WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (I) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMER OR ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMER MAY BE LOCATED, (II) GUARANTOR IRREVOCABLY SUBMITS ITSELF TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND (III) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUCH FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS.** Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of June 16, 2004.

Guarantor:

*[signature]*
RAMONA SUAREZ

Witness: *[signature]*

Printed Name: RAMONA SUAREZ

Address:

515 East 83rd
New York, Ney York 10028



**UNCONDITIONAL GUARANTY**

FOR VALUE RECEIVED, and in order to induce **MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.** ("MLBFS") to advance moneys or extend or continue to extend credit or lease property to or for the benefit of, or modify its credit relationship with, or enter into any other financial accommodations with **J.S. SUAREZ, INC.**, a corporation organized and existing under the laws of the State of New York (with any successor in interest, including, without limitation, any successor by merger or by operation of law, herein collectively referred to as "Customer") under: (a) that certain **WCMA LOAN AND SECURITY AGREEMENT NO. 850-07A36** between MLBFS and Customer (the "Loan Agreement"), (b) any "Loan Documents", as that term is defined in the Loan Agreement including, without limitation, the **NOTE(S)** incorporated by reference in the Loan Agreement, and (c) all present and future amendments, restatements, supplements and other evidences of any extensions, increases, renewals, modifications and other changes of or to the Loan Documents (collectively, the "Guaranteed Documents"), **the undersigned ("Guarantor") hereby unconditionally guarantees to MLBFS**: (i) the prompt and full payment when due, by acceleration or otherwise, of all sums now or any time hereafter due from Customer to MLBFS under the Guaranteed Documents, (ii) the prompt, full and faithful performance and discharge by Customer of each and every other covenant and warranty of Customer set forth in the Guaranteed Documents, and (iii) the prompt and full payment and performance of all other indebtedness, liabilities and obligations of Customer to MLBFS, howsoever created or evidenced, and whether now existing or hereafter arising (collectively, the "Obligations") Guarantor further agrees to pay all reasonable costs and expenses (including, but not limited to, court costs and reasonable attorneys' fees) paid or incurred by MLBFS in endeavoring to collect or enforce performance of any of the Obligations, or in enforcing this Guaranty. Guarantor acknowledges that MLBFS is relying on the execution and delivery of this Guaranty in advancing moneys to or extending or continuing to extend credit to or for the benefit of Customer.

This Guaranty is absolute, unconditional and continuing and shall remain in effect until all of the Obligations shall have been fully and indefeasibly paid, performed and discharged Upon the occurrence and during the continuance of any Event of Default under the Guaranteed Documents, any or all of the indebtedness hereby guaranteed then existing shall, at the option of MLBFS, become immediately due and payable from Guarantor (it being understood, however, that upon the occurrence of any "Bankruptcy Event", as defined in the Guaranteed Documents, all such indebtedness shall automatically become due and payable without action on the part of MLBFS). Notwithstanding the occurrence of any such event, this Guaranty shall continue and remain in full force and effect. To the extent MLBFS receives payment with respect to the Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside, required to be repaid by MLBFS or is repaid by MLBFS pursuant to a settlement agreement, to a trustee, receiver or any other person or entity, whether under any Bankruptcy law or otherwise (a "Returned Payment"), this Guaranty shall continue to be effective or shall be reinstated, as the case may be, to the extent of such payment or repayment by MLBFS, and the indebtedness or part thereof intended to be satisfied by such Returned Payment shall be revived and continued in full force and effect as if said Returned Payment had not been made.

The liability of Guarantor hereunder shall in no event be affected or impaired by any of the following, any of which may be done or omitted by MLBFS from time to time, without notice to or the consent of Guarantor: (a) any renewals, amendments, modifications or supplements of or to any of the Guaranteed Documents, or any extensions, forbearances, compromises or releases of any of the Obligations or any of MLBFS' rights under any of the Guaranteed Documents; (b) any acceptance by MLBFS of any collateral or security for, or other guarantees of, any of the Obligations; (c) any failure, neglect or omission on the part of MLBFS to realize upon or protect any of the Obligations, or any collateral or security therefor, or to exercise any lien upon or right of appropriation of any moneys, credits or property of Customer or any other guarantor, possessed by or under the control of MLBFS or any of its affiliates, toward the liquidation or reduction of the Obligations; (d) any invalidity, irregularity or unenforceability of all or any part of the Obligations, of any collateral security for the Obligations, or the Guaranteed Documents; (e) any application of payments or credits by MLBFS, (f) the granting of credit from time to time by MLBFS to Customer in excess of the amount set forth in the Guaranteed Documents; or (g) any other act of commission or omission of any kind or at any time upon the part of MLBFS or any of its affiliates or any of their respective employees or agents with respect to any matter whatsoever. MLBFS shall not be required at any time, as a condition of Guarantor's obligations hereunder, to resort to payment from Customer or other persons or entities whatsoever, or any of their properties or estates, or resort to any collateral or pursue or exhaust any other rights or remedies whatsoever.

No release or discharge in whole or in part of any other guarantor of the Obligations shall release or discharge Guarantor or any other guarantor, unless and until all of the Obligations shall have been indefeasibly fully paid and discharged. Guarantor expressly waives presentment, protest, demand, notice of dishonor or default, notice of acceptance of this Guaranty, notice of advancement of funds under the Guaranteed Documents and all other notices and formalities to which Customer or Guarantor might be entitled, by statute or otherwise, and, so long as there are any Obligations or MLBFS is committed to extend credit to Customer, Guarantor waives any right to revoke or terminate this Guaranty without the express written consent of MLBFS.

So long as there are any Obligations, Guarantor shall not have any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right, or remedy of MLBFS against Customer or any security which MLBFS now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law, or otherwise.

MLBFS is hereby irrevocably authorized by Guarantor at any time during the continuance of an Event of Default under the Loan Agreement or any other of the Guaranteed Documents or in respect of any of the Obligations, in its sole discretion and without demand or notice of any kind, to appropriate, hold, set off and apply toward the payment of any amount due hereunder, in such order of application as MLBFS may elect, all cash, credits, deposits, accounts, financial assets, investment property, securities and any other property of Guarantor which is in transit to or in the possession, custody or control of MLBFS or Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"), or any of their respective agents, bailees or affiliates. Guarantor hereby collaterally assigns and grants to MLBFS a continuing security interest in all such property as additional security for the Obligations. Upon the occurrence and during the continuance of an Event of Default, MLBFS shall have all rights in such property available to collateral assignees and secured parties under all applicable laws, including, without limitation, the Uniform Commercial Code.

Guarantor agrees to furnish to MLBFS such financial information concerning Guarantor as may be required by any of the Guaranteed Documents or as MLBFS may otherwise from time to time reasonably request. Guarantor further hereby irrevocably authorizes MLBFS and each of its affiliates, including

without limitation MLPF&S, to at any time (whether or not an Event of Default shall have occurred) obtain from and disclose to each other any and all financial and other information about Guarantor.

Guarantor warrants and agrees that: (a) unless clearly stated or noted, no material assets shown on any financial statements of Guarantor heretofore or hereafter furnished to MLBFS are or will be held in an irrevocable trust, pension trust, retirement trust, IRA or other trust or form of ownership exempt from execution by creditors of Guarantor, and, (b) except upon the prior written consent of MLBFS, which consent will not be unreasonably withheld, Guarantor will not hereafter transfer any material assets of Guarantor to any trust or third party if the effect thereof will be to cause such assets to be exempt from execution by creditors of Guarantor (excluding, however, normal and reasonable contributions to pension plans, retirement plans, etc., and IRA rollovers).

No delay on the part of MLBFS in the exercise of any right or remedy under the Guaranteed Documents, this Guaranty or any other agreement shall operate as a waiver thereof, and, without limiting the foregoing, no delay in the enforcement of any security interest, and no single or partial exercise by MLBFS of any right or remedy shall preclude any other or further exercise thereof or the exercise of any other right or remedy. This Guaranty may be executed in any number of counterparts, each of which counterparts, once they are executed and delivered, shall be deemed to be an original and all of which counterparts, taken together, shall constitute but one and the same Guaranty. This Guaranty shall be binding upon Guarantor and Guarantor's heirs and personal representatives, and shall inure to the benefit of MLBFS and its successors and assigns.

This Guaranty shall be governed by the laws of the State of Illinois. **WITHOUT LIMITING THE RIGHT OF MLBFS TO ENFORCE THIS GUARANTY IN ANY JURISDICTION AND VENUE PERMITTED BY APPLICABLE LAW: (I) GUARANTOR AGREES THAT THIS GUARANTY MAY AT THE OPTION OF MLBFS BE ENFORCED BY MLBFS IN EITHER THE STATE OF ILLINOIS OR IN ANY OTHER JURISDICTION WHERE GUARANTOR, CUSTOMER OR ANY COLLATERAL FOR THE OBLIGATIONS OF CUSTOMER MAY BE LOCATED, (II) GUARANTOR IRREVOCABLY SUBMITS ITSELF TO JURISDICTION IN THE STATE OF ILLINOIS AND VENUE IN ANY STATE OR FEDERAL COURT IN THE COUNTY OF COOK FOR SUCH PURPOSES, AND (III) GUARANTOR WAIVES ANY AND ALL RIGHTS TO CONTEST SAID JURISDICTION AND VENUE AND THE CONVENIENCE OF ANY SUCH FORUM AND ANY AND ALL RIGHTS TO REMOVE SUCH ACTION FROM STATE TO FEDERAL COURT. GUARANTOR FURTHER WAIVES ANY RIGHTS TO COMMENCE ANY ACTION AGAINST MLBFS IN ANY JURISDICTION EXCEPT IN THE COUNTY OF COOK AND STATE OF ILLINOIS. MLBFS AND GUARANTOR HEREBY EACH EXPRESSLY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES AGAINST THE OTHER PARTY WITH RESPECT TO ANY MATTER RELATING TO, ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS GUARANTY AND/OR ANY OF THE TRANSACTIONS WHICH ARE THE SUBJECT MATTER OF THIS GUARANTY. GUARANTOR FURTHER WAIVES THE RIGHT TO BRING ANY NON-COMPULSORY COUNTERCLAIMS.** Wherever possible each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty shall be prohibited by or invalid under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. No modification or waiver of any of the provisions of this Guaranty shall be effective unless in writing and signed by Guarantor and an officer of MLBFS.

Dated as of June 16, 2004.

Guarantor:

_____
MATTHEW SUAREZ

Witness: _____

Printed Name: _____

Address:

1675 York Ave
New York, Ney York 10128

**EXHIBIT D**

Private Client Group

**Merrill Lynch Business Financial Services Inc.**
222 North LaSalle Street
17th Floor
Chicago, Illinois 60601
(312) 499-3116
FAX: (312) 499-3253

**Merrill Lynch**

June 5, 2007

J.S. Suarez, Inc.
450 Park Avenue
New York, NY 10022

     **Re: Loan Documents Amendment and Extension**

Ladies & Gentlemen:

This Letter Agreement will serve to confirm certain agreements of Merrill Lynch Business Financial Services Inc. ("MLBFS") and J.S. Suarez, Inc. ("Customer") with respect to: (i) that certain **WCMA LOAN AND SECURITY AGREEMENT NO. 850-07A36** between MLBFS and Customer (including any previous amendments and extensions thereof), and (ii) all other agreements between MLBFS and Customer or any party who has guaranteed or provided collateral for Customer's obligations to MLBFS (a "Guarantor") in connection therewith (collectively, the "Loan Documents"). Capitalized terms used herein and not defined herein shall have the meaning set forth in the Loan Documents.

As we have discussed, one or more Defaults have occurred and are continuing under the Loan Documents because, among other reasons, Customer failed to maintain a Minimum Tangible Net Worth of $225,000.00 as of December 31, 2006 and March 31, 2007, (the "Identified Default"). Customer and Guarantors have requested that MLBFS waive the Identified Default.

While MLBFS is under no obligation to do so, MLBFS will waive the Identified Default through March 31, 2007 but not thereafter, subject to the terms of this Letter Agreement. Accordingly, effective as of the "Effective Date" (as defined below), the Loan Documents are hereby amended as follows:

(a) The "Maturity Date" of the WCMA Line of Credit is hereby extended to September 30, 2007.

(b) The term "Maximum WCMA Line of Credit" shall mean:

 (i) $570,000.00 from the Effective Date through June 29, 2007;

 (ii) $560,000.00 from June 30, 2007 through July 18, 2007;

 (iii) $547,000.00 from July 19, 2007 through July 30, 2007;

 (iv) $535,000.00 from July 31, 2007 through August 30, 2007;

 (v) $525,000.00 from August 31, 2007 through September 29, 2007;

 (vi) $0.00 effective on September 30, 2007.

(c) The "Line Fee" for the period ending September 30, 2007, shall be $1,500.00. Customer hereby authorizes and directs MLBFS to charge said amount to WCMA Account No. 850-07A36 on or at any time after the Effective Date.

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

J.S. Suarez, Inc.
June 5, 2007
Page No. 2

(d) Customer agrees to pay to MLBFS "Covenant Waiver" fee of $1,500.00 under the Loan Agreement for the waiver of the Identified Default, which fee is fully earned at this time, and by its signature below hereby directs MLBFS to cause such fee to be charged to the WCMA Account on or after the Effective Date.

(e) **Life Insurance as Additional Collateral.** As an additional material inducement for MLBFS to enter into this Letter Agreement, Matthew Suarez has agreed to collaterally assign his AIG Life Insurance Policy to MLBFS as additional collateral for the Obligations. Accordingly, Matthew Suarez will execute all documentation required by MLBFS and AIG Life Insurance Company, if applicable, to hereby pledge, assign, transfer and grant a security interest in, deliver and set over to and in favor of MLBFS, all rights, title, interests and claims in and to:

(i) Life Insurance Policy No. _____ issued on _____ by AIG Life Insurance Company in the amount of $_____, beneficially owned by Matthew Suarez, and insuring the life of Matthew Suarez (the "Policy");

(ii) All renewals and supplementary contracts issued in connection with the Policy, and all rights, title and interests in and to all dividends, surpluses or additions pertaining to the Policy, together with all claims and options and the sole right to obtain or exercise any collection, loan, advance and surrender privilege in and under the Policy. Notwithstanding anything to the contrary contained in this Letter Agreement, upon the death of Matthew Suarez, the proceeds of the Policy shall be paid directly to MLBFS, and shall be treated as a permanent payment on account of the Obligations. If the proceeds of the Policy exceed the amount of the Obligations, then any such excess shall be paid by MLBFS directly to the secondary beneficiaries of the Policy or to the executor of the estate of Matthew Suarez.

Customer and Matthew Suarez represent and warrant: (i) that the Policy is in full force and effect, and Customer and Matherw Suarez shall pay all premiums and do everything else necessary to maintain the Policy in full force and effect; (ii) Matthew Suarez is the sole owner of the Policy; (iii) Matthew Suarez except for this pledge to MLBFS, has not pledged, assigned, transferred, delivered or set over any right, title or interest in the Policy to any other party; (iv) Matthew Suarez owns the Policy free and clear of all liens, charges, encumbrances, security interests or other claims; and (v) there have been no loans, and Matthew Suarez shall not obtain or permit any other person (other than MLBFS) to obtain any form of loan, against the Policy. Customer and Matthew Suarez acknowledge and agree that (a) their failure to maintain and preserve the existence of the Policy and (b) should any of the above representations and warranties be found to be untrue at any time or when made will constitute an Event of Default under the Loan Documents and this Agreement.

Except as expressly amended hereby, the Loan Documents shall continue in full force and effect upon all of their terms and conditions.

By their execution of this Letter Agreement, the below-named Guarantors hereby consent to the foregoing modifications to the Loan Documents, and hereby agree that the "Obligations" under their respective Unconditional Guaranty and/or agreements providing collateral shall extend to and include the Obligations of Customer under the Loan Documents, as amended hereby.

Customer and said Guarantors acknowledge, warrant and agree, as a primary inducement to MLBFS to enter into this Agreement, that: (a) Other than the Identified Default, no Default or Event of Default has occurred and is continuing under the Loan Documents; (b) no Default or Event of Default has occurred and is continuing under the Loan Documents; (c) each of the warranties of Customer in the Loan Documents are true and correct as of the date hereof and shall be deemed remade as of the date hereof; (d neither Customer nor any of said Guarantors have any claim against MLBFS or any of its affiliates arising out of or in connection with the Loan Documents or any other matter whatsoever; and (e) neither Customer nor any of said Guarantors have any defense to payment of any amounts owing, or any right of counterclaim for any reason under, the Loan Documents.

MERRILL LYNCH BUSINESS FINANCIAL SERVICES INC.

J.S. Suarez, Inc.
June 5, 2007
Page No. 3

The obligations of MLBFS under this Letter Agreement are subject to its receipt (where applicable) and satisfaction with the following:

- A signed copy of the original assignment of Life Insurance Policy of Matthew Suarez with Merrill Lynch Business Financial Services Inc. listed as the primary beneficiary;

Provided that no Event of Default, other than the Identified Default, or event which with the giving of notice, passage of time, or both, would constitute an Event of Default, shall then have occurred and be continuing under the terms of the Loan Documents, and the condition specified above shall have been met to our satisfaction, the amendments and agreements in this Letter Agreement will become effective on the date (the "Effective Date") upon which: (a) Customer and the Guarantors shall have executed and returned the duplicate copy of this Letter Agreement and the other documents enclosed herewith; and (b) an officer of MLBFS shall have reviewed and approved this Letter Agreement and such other documents as being consistent in all respects with the original internal authorization hereof.

Notwithstanding the foregoing, if Customer and the Guarantors do not execute and return the duplicate copy of this Letter Agreement and such other documents within 5 days from the date hereof, or if for any other reason (other than the sole fault of MLBFS) the Effective Date shall not occur within said 5-day period, then all of said amendments and agreements will, at the sole option of MLBFS, be void.

Very truly yours,

**Merrill Lynch Business Financial Services Inc.**

By: _____
Thomas Hunt
Loan Quality Officer

Accepted:

**J.S. Suarez, Inc.**

By: _____
Printed Name: Matthew Suarez
Title: President

Approved:

_____
Matthew Suarez

_____
Ramona Suarez